UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LATRESSA CLAY,

        Plaintiff,

                                       Case No. 2:21-cv-11880

v.                                  Honorable Linda V. Parker

MICHIGAN DEPARTMENT
OF CORRECTIONS (MDOC),
JODI L. ANGELO[1], SHERRI SANKEY,
SHARON RAMSEY, and JEREMY BUSH,

        Defendants.
_____/

## OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS (ECF NO. 11) AND GRANTING PLAINTIFF'S MOTION TO AMEND COMPLAINT (ECF NO. 13)

Latressa Clay ("Plaintiff") filed this lawsuit against her former employer, the

Michigan Department of Corrections ("MDOC"), following her termination in

April 2021.  (ECF No. 1.)  Plaintiff filed the action in state court, and on August

13, 2021, MDOC removed the case to federal court pursuant to 28 U.S.C.

§ 1441(a).  (*Id.*)  On August 30, 2021, Plaintiff filed an Amended Complaint

omitting her state law claim under the Michigan Whistleblower's Protection Act.

---

[1] Defendants note that this Defendant's name is misspelled in Plaintiff's Amended Complaint, and that the correct last name is DeAngelo.  (ECF No. 11 at Pg ID 77 n. 1.)  Plaintiff acknowledges the correct spelling in her proposed Second Amended Complaint.  (*See* ECF No. 13 at Pg ID 99.)

(ECF No. 5.)  The Amended Complaint alleges a single constitutional violation pursuant to 42 U.S.C. §1983 of First Amendment retaliation against MDOC and four individuals employed by MDOC or MDOC facilities.  (*Id*.)

Presently before the Court is Defendants' motion to dismiss, filed on July 21, 2021.  (ECF No. 11.)  The parties have fully briefed the motion.  (ECF Nos. 14, 16.)  On January 11, 2022, Plaintiff filed a motion for leave to file a second amended complaint.  (ECF No. 13.)  Defendants have responded to the motion. (ECF No. 15.)  The Court finds that Plaintiff's proposed Second Amended Complaint is not futile and that Plaintiff has adequately stated a claim for relief. Therefore, the Court denies Defendants' motion to dismiss (ECF No. 11) and grants Plaintiff's motion to amend (ECF No. 13).

## I.      Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint.  *RMI Titanium Co. v. Westinghouse Elec. Corp.,* 78 F.3d 1125, 1134 (6th Cir. 1996).  To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Facial plausibility requires the plaintiff to plead factual content that would allow the court to draw a reasonable inference that the defendant is liable for the violations claimed.  *Id.*  In deciding whether the

plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This presumption is not applicable to legal conclusions, however. *Iqbal*, 556 U.S. at 668. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

Federal Rule of Civil Procedure 15(a) instructs the courts to "freely grant" leave to amend "where justice so requires." This is because, as the Supreme Court has advised, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. *Foman v. Davis*, 371 U.S. 178, 182 (1962). However, a motion to amend a complaint should be denied if the amendment … would be futile. *Id.* An amendment is futile when the proposed amendment fails to state a claim upon which relief can be granted and thus is subject to dismissal pursuant to Rule 12(b)(6). *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000); *see also Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 (6th Cir. 2005) (citing *Neighborhood Dev. Corp. v. Advisory Council on Historic Pres.*, 632 F.2d 21, 23 (6th Cir. 1980) (noting that [a]mendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss."))

## II.      Factual and Procedural Background

MDOC is a governmental entity authorized to operate correctional facilities throughout the State of Michigan.  (Am. Compl. ¶ 2, ECF No. 5 at Pg ID 51.) Defendants DeAngelo, Sankey, Ramsey, and Bush hold leadership roles at various MDOC facilities.  (*Id*. ¶¶ 3-6, Pg ID 51-52.)  MDOC employed Plaintiff as a Registered Nurse at the Detroit Detention Center ("DDC").  (*Id*. ¶ 11, Pg ID 52.)

On November 1, 2020, an inmate on dialysis at one of MDOC's facilities, the Detroit Re-Entry Center ("DRC"), was short of breath.[2]  (*Id*. ¶ 12, ECF No. 5 at Pg ID 52.)  Defendants DeAngelo, Sankey, Ramsey, and Bush "tried to force Plaintiff to leave her designated work area at DDC to aid the inmate at [DRC]. . .." (*Id*. ¶ 14, Pg ID 53.)  "Plaintiff was the only medical professional on-site at the DDC at the time of the incident."  (*Id*. ¶ 19.)  Based on her training and experience, it was Plaintiff's understanding that MDOC required at least one on-site medical professional at all detention facilities, including the DDC, at all hours of each day. (*Id.* ¶ 13, Pg ID 52-53.)  Plaintiff therefore refused the command and told staff to call 9-1-1.  (*Id.* ¶ 15.)  She also advised the officers that it would be against the law

---

[2] The distance between the DDC and DRC is approximately .8 of a mile.  The Court may take judicial notice of this fact.  *See Livingston Christian Sch. v. Genoa Charter Twp.*, 858 F.3d 996, 1008 (6th Cir. 2017) ("We may take judicial notice of maps showing the distances between these locations."); *see also, e.g.*, *Hund v. Hund*, No. 334313, 2017 Mich. App. LEXIS 1082, at *14 (Ct. App. July 6, 2017) (taking judicial notice of distance and extrapolating travel time).

for her to leave DDC without another medical professional taking her place.  (*Id*.
¶ 16.)

On or about April 26, 2021, MDOC terminated Plaintiff from employment.
(*Id*. ¶ 22.)  Plaintiff did not have any performance issues, and any such allegations
of problems with her performance, attitude, or disposition were fabricated to justify
her termination.  (*Id.* ¶ 21, Pg ID 54.)

Defendants filed a motion to dismiss Plaintiff's complaint pursuant to
Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 11.)  In their motion,
Defendants argue that Plaintiff fails to state a First Amendment retaliation claim
because she did not speak as a private citizen on a matter of public concern and
because the individual Defendants are entitled to qualified immunity.  (*Id*.)
Plaintiff then filed a motion for leave to file a Second Amended Complaint.  (ECF
No. 13.)  Plaintiff asserts that she later told her friends and family about the
incident at the DDC.  (ECF No. 13 at Pg ID 103.)  Plaintiff seeks leave to add
allegations that leaving the DDC without any medical professional present was a
matter of public concern and that she advised friends and family members about it.
(Proposed Second. Am. Compl., ¶¶ 17-19, ECF No. 13-1 at Pg ID 110.)

### III.   Law and Analysis

### A.   Motion to Dismiss

Plaintiff alleges that Defendants violated her First Amendment free speech right by terminating her employment after she informed them that she was refusing to leave her designation at the DDC to render aid to a prisoner at the DRC and told employees that it was against the law for her to do so.  (Am. Compl. ECF No. 5.) "[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out[.]"  *Hartman v. Moore*, 547 U.S. 250, 256 (2006) (citing *Crawford-El v. Britton*, 523 U.S. 574, 592 (1998)); *see also Perry v. Sinderman*, 408 U.S. 593, 597 (1972) (the government may not punish individuals or deprive them of a benefit based on their "constitutionally protected speech").  In the Sixth Circuit, a plaintiff claiming First Amendment retaliation generally must prove three elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Maben v. Thelen*, 887 F.3d 252, 262 (6th Cir. 2018) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc)); *see also Farhat v. Jopke*, 370 F.3d 580, 588 (6th Cir. 2004) (citing *Leary v. Daeschner,* 349 F.3d 888, 897 (6th Cir.2003)).

Defendants only challenge Plaintiff's ability to show that she engaged in protected conduct.  (*See* ECF No. 11 at Pg ID 86.)  Public employees do not surrender all their First Amendment rights when they clock in for work.  *See Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006).  The Supreme Court has decided that, in certain circumstances, an employee is protected by the First Amendment to speak as a citizen on matters of public concern.  *Id*.  The rational underlying protecting this conduct is that "public employees are often the members of the community who are likely to have informed opinions as to the operations of their public employers, operations which are of substantial concern to the public."  *City of San Diego, Cal. v. Roe*, 543 U.S. 77, 82 (2004).  But when public employees make statements pursuant to their official duties, they are not speaking as citizens for First Amendment purposes, and the Constitution does not protect their statements from discipline by their employer.  *Garcetti*, 547 U.S.  at 421.

The Sixth Circuit has held that a public employee alleging First Amendment retaliation must satisfy three requirements to show protected speech.  *Evans-Marshall v. Bd. of Educ.*, 624 F.3d 332, 337-38 (6th Cir. 2010).  First, the employee must speak on "matters of public concern."  *Id.* at 337 (citing *Connick v. Myers*, 461 U.S. 138, 143 (1983)).  Next, the employee must satisfy the *Pickering* test and show that his or her speech interest outweighs "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through

7

its employees." *Id.* (quoting *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cnty., Illinois*, 391 U.S. 563, 568 (1968)).  Last, an employee must speak as a private citizen and not as an employee pursuant to his or her official duties.  *Id.* at 338 (citing *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006)).  "The determination of whether a public employee engaged in protected speech is a pure question of law for the Court, not a question of fact or a mixed question of fact and law."  *Oakes v. Weaver*, 331 F. Supp. 3d 726, 743 (E.D. Mich. 2018) (citing *Mayhew v. Town of Smyrna, Tennessee*, 856 F.3d 456, 464 (6th Cir. 2017)).

### 1.  Matter of Public Concern

Defendants argue that Plaintiff's oral statements to her supervisors were not matters of public concern.  (ECF No. 11 at Pg ID 92-93.)  As the threshold issue, "[s]peech is of 'public concern' if it involves issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government."  *Farhat*, 370 F.3d at 590.  To determine whether challenged speech is a matter of public concern, courts apply the form-content-context test.  *Id.* at 589.  "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record."  *Id.* (quoting *Connick*, 461 U.S. at 147-48 (footnote omitted)); *see also Fox v. Traverse City Area Pub. Sch. Bd. of Educ.*, 605 F.3d 345, 348 (6th Cir. 2010) ("[W]e must

8

consider both its content and context—including to whom the statement was made—to determine whether the plaintiff made the statement pursuant to [his or her] individual duties.").

Further, the Sixth Circuit "has distilled the 'public concern' test by stating that the court must determine: the 'focus' of the speech; 'the point of the speech in question'; 'to what purpose the employee spoke'; 'the intent of the speech'; or 'the communicative purpose of the speaker.'" *Farhat*, 370 F.3d at 593 (collecting cases).  It follows "that the proper inquiry is *not* what might be 'incidentally conveyed' by the speech, and that 'passing' or 'fleeting' references to an arguably public matter do not elevate the speech to a matter of 'public concern' where the 'focus' or 'point' of the speech advances only a private interest."  *Id*. at 592-93 (emphasis in original).

Turning to the speech at bar, Plaintiff alleges that her protected speech includes her oral refusal to obey a command to leave the DDC and instead directing the staff to call 9-1-1.  (Am. Compl. ¶ 15, ECF No. 5 at Pg ID 53.) Plaintiff also alleges that she advised the Defendants that leaving her post at the DDC was unlawful.  (*Id*. ¶ 16.)  Defendants characterize the speech as a complaint regarding Plaintiff's supervisor's actions and Plaintiff's responsibilities as an employee.  (*Id*. at Pg ID 92-93.)  In response, Plaintiff argues that the officers' command to leave her designated area to aid the inmate at DRC, leaving the DDC

without any healthcare professionals, and her response, in turn, "facilitates [a] discussion to the public of how correctional facilities in the State of Michigan should function." (ECF No. 14 at Pg ID 130.) Further, Plaintiff explains that the "speech qualifies as a matter of public concern as the comments that she made deal with medical standards of care within prisons operated within the State of Michigan." (*Id.*)

At first glance, the content of Plaintiff's speech suggests that the focus was her disagreement with management's directions rather than the immediate emergency or public concern for prisoner health and welfare. The Sixth Circuit has regularly held that employee complaints or disagreements with management decisions are not protected speech. *See Barnes v. McDowell*, 848 F.2d 725, 734-35 (6th Cir. 1988) (quoting *Murray v. Gardner*, 741 F.2d 434, 438 (D.C. Cir. 1984) (concluding that there was no corruption and plaintiff's "complaints appear to be nothing more than examples 'of the quintessential employee beef: management has acted incompetently'")); *Boulton v. Swanson*, 795 F.3d 526, 532 (6th Cir. 2015) ("[W]e have found mere assertions of incompetence and poor management decision-making to be run-of-the-mill employment disputes—particularly when the recommended course of action would benefit the employee."); *Thomson v. Scheid*, 977 F.2d 1017, 1020-21 (6th Cir. 1992) (holding speech concerning the plaintiff's duties as an employee and therefore content concerning internal department policy,

was not a matter of public concern); *Garvie v. Jackson*, 845 F.2d 647, 651 (6th Cir. 1988) ("The record shows that [the plaintiff's] criticisms more closely resembled an employee's complaints regarding his superior's actions and his own responsibilities as a [d]epartment [h]ead than a citizen's speaking out on a matter of public [decision-making].").

However, Plaintiff also alleges that her protected speech includes advising the Defendants that leaving her post at the DDC was unlawful. Plaintiff based this speech upon her training, experience, and understanding and belief that, "under State law, MDOC was required to have at least one medical professional on site at all detention facilities, including DDC, 24 hours a day, and seven days a week." (Am. Compl. ¶ 13, ECF No. 5 at Pg ID 53.) In her Amended Complaint and proposed Second Amended Complaint, Plaintiff does not reference the state law she believed she would have violated if she followed Defendants' directions.[3] Thus, Defendants argue that "Plaintiff cannot identify any law, rule or regulation

---

[3] Plaintiff only references MDOC Policy Directive 03.04.100, in her response brief which was effective at the time of the incident. (ECF No. 14 at Pg ID 132.) She argues that the command violated the policy. To support this contention, Plaintiff excerpts a portion of the policy stating "[p]risoners who require urgent care shall be sent to a local hospital or local emergency clinic if a [Qualified Health Professional ("QHP")] determines necessary services cannot be provided at the facility." (*Id.*) Plaintiff concedes that she was a QHP at the time of the incident. (*Id.*) As such, the excerpt of the policy directive presented by the Plaintiff does not address whether Plaintiff was forbidden from leaving the DDC.

that was violated when she was instructed to aid a prisoner, so this conclusion of law need not be accepted as true." (ECF No. 11 at Pg ID 92.)

"[W]hen public employees allege that government officials break the law, their speech addresses a matter of public concern." *Kiessel v. Oltersdorf*, 459 F. App'x 510, 514 (6th Cir. 2012) (collecting cases); *see also Banks v. Wolfe Cnty. Bd. of Educ.*, 330 F.3d 888, 896 (6th Cir. 2003) ("Defendants' failure to follow state law is a 'concern to the community.'"); *Marohnic v. Walker*, 800 F.2d 613, 616 (6th Cir. 1986) ("Public interest is near its zenith when ensuring that public organizations are being operated in accordance with the law . . . ."); *Walker v. Burkes*, No. 2:15-CV-3058, 2017 WL 3962627, at *5 (S.D. Ohio Sept. 8, 2017) (finding a matter of public concern where plaintiff "pleaded that she chiefly spoke out about purported illegal activity within the institution.").

In *Kiessel*, the Sixth Circuit held in an unpublished case that plaintiff's letter to a newspaper editor that accused the government of engaging in unlawful conduct was protected speech. *Id*. at 515. The court noted that the speech did not elaborate why the government's actions were unlawful or what laws were broken. *Id*. at 514. In *Boulton*, the Sixth Circuit held that a plaintiff's statements regarding inadequate CPR training reflected a significant public interest of detainees in jail and that "[t]he public has a strong interest in knowing whether jail officials are ill-equipped to provide emergency care to prisoners." 795 F.3d at 535; *see also Perry*

*v. McGinnis*, 209 F.3d 597, 606 (6th Cir. 2000) ("Because [plaintiff's] speech

served to ensure that the MDOC, an arm of the state, was operating in accordance

with the law… it concerns the most public of matters."); *Howard v. Livingston*

*County*, No. 20-11236, 2021 WL 4458542, at *9 (E.D. Mich. Sept. 29, 2021) ("It is

well settled that accusations of corruption, illegal conduct, and unlawful

discrimination by a public agency are archetypical topics of acute public

concern.")  Similarly, here, although Plaintiff has not specifically stated which

state law was broken, she has alleged some unlawful conduct by Defendants.[4]  As

such, viewing the facts in the light most favorable to Plaintiff and according her all

---

[4] Even if Plaintiff was incorrect in her understanding that leaving the DDC was against the law, this does not deprive her of First Amendment protection.  *See Farhat*, 370 F.3d at 591(end footnote omitted) ("Although First Amendment protection might not be available if the employer can show that the public employee knowingly or recklessly made false statements, a public employee is not required to prove the truth of his or her speech in order to secure the protections of the First Amendment."); *City of Elyria*, 502 F.3d 484, 493 (6th Cir. 2007) ("the truthfulness of the employee's statements is not relevant in determining whether the speech involves a matter of public concern unless, of course, the employee intentionally or recklessly made false statements."); *Reuland v. Hynes*, 460 F.3d 409, 414 (2d Cir. 2006) ("False speech, as well as hyperbole, is still entitled to First Amendment protection, as long as it is not made with knowledge or reckless disregard of its falsity").  Nevertheless, determining whether a false statement has been knowingly or recklessly made is inappropriate at the pleadings stage.  *See Swetlik v. Crawford*, 738 F.3d 818, 827 (7th Cir. 2013) ("Whether an employee recklessly disregarded the truth in making a statement will often present a disputed factual issue.")  Courts must look at the face of the complaint and consider the facts as true when considering a motion to dismiss.  *See Devlin v. Kalm*, 531 Fed. App'x 697, 706 (noting that plaintiff's complaint, *taken as true* for motion to dismiss purposes, showed he had strong first amendment interests under the *Pickering* balancing analysis.) (emphasis added).

reasonable inferences from those facts, the Court finds that Plaintiff has satisfied her burden at the pleading stage by alleging that her speech touched on a matter of public concern.

### 2.     Pickering Balancing Test

In addition to determining whether Plaintiff spoke about a matter of public concern, under *Pickering*, Plaintiff's interest in commenting on the matter must outweigh MDOC's interest in promoting the efficiency of the public services it performs.  *See Garvie*, 845 F.2d at 651 ("a public employer may not dismiss an employee's speech on matters that concern the public . . . unless the employer's interest in efficient operation outweighs the employee's interest in speaking freely.").  The *Pickering* balancing test requires the Court to weigh "the employee's interest in 'commenting upon matters of public concern'" against "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Leary*, 228 F.3d at 737 (quoting *Pickering*, 391 U.S. at 568).  "The *Pickering* balance requires full consideration of the government's interest in the effective and efficient fulfillment of its responsibilities to the public." *Connick*, 461 U.S. at 150.  However, it is the government's burden of justifying the disciplinary action under *Pickering*.  *Id*.; *see also Rodgers*, 344 F.3d at 601.

14

The Court begins by assessing Plaintiff's speech interest.  Plaintiff has plausibly alleged that she was speaking on a matter of public concern, and thus her speech "rest[s] on the highest rung of the hierarchy of First Amendment values." *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 913 (1982) (quoting *Carey v. Brown*, 447 U.S. 455, 467 (1980)); *see also Connick*, 461 U.S. at 152-53 (explaining that the greater the extent to which the speech involves matters of public concern, the stronger the employer's showing must be).

Next, the Court considers the Defendants' interest in promoting the efficiency of its' public services.  When conducting this balancing test, the Sixth Circuit considers whether an employee's comments (i) "meaningfully interfere with the performance of her duties"; (ii) "undermine a legitimate goal or mission of the employer"; (iii) "create disharmony among co-workers"; (iv) "impair discipline by superiors"; or (v) "destroy the relationship of loyalty and trust required of confidential employees." *Rodgers*, 344 F.3d at 601 (citation omitted).  "In performing the balancing, the statement will not be considered in a vacuum; the manner, time, and place of the employee's expression are relevant, as is the context in which the dispute arose." *Rankin v. McPherson*, 483 U.S. 378, 388 (1987).  The Defendants bear the burden of demonstrating that legitimate grounds existed justifying a termination. *Rodgers*, 344 F.3d at 601 (citing *Rankin*, 483 U.S. at 388)

Defendants argue that Plaintiff's speech undermined the legitimate goal of having its' own employee come to the aid of a state inmate.  (ECF No. 11 at Pg. ID 93.)  Plaintiff responds that her comments did not interfere with Defendants' interest because the MDOC policy at the time allowed for her to make a judgment call on the ability to call for outside medical help.  (ECF No. 14 at Pg ID 131.)  Plaintiff further asserts that leaving the DDC temporarily would have resulted in dangerous medical conditions for those at the DDC.  (*Id*., Pg ID 132.)

The Court finds at the motion to dismiss stage, there is no evidence that Plaintiff's speech undermined a legitimate goal or mission of the employer.  *See Devlin v. Kalm*, 531 F. App'x 697, 707 (6th Cir. 2013) ("Defendants in this court are frequently denied summary judgment because of a failure to produce evidence that would permit the court to strike the *Pickering* balance in their favor.  This suggests that at the motion-to-dismiss stage—where facts outside the complaint cannot be considered and the plaintiff's allegations must be accepted as true—it will rarely be possible to determine whether a defendant's actions were clearly unlawful."); *Higbee v. E. Michigan Univ.*, 399 F. Supp. 3d 694, 706 (E.D. Mich. 2019) ("Without further factual development, the Court is unable to better define the [i]ndividual [d]efendants' efficiency interests . . . .")  Accordingly, the Court concludes at this early stage, that there has not been sufficient factual development to meaningfully engage in the *Pickering* analysis.

### 3.      Pursuant to Official Duties

Defendants argue that Plaintiff's speech is not protected because it was made

pursuant to her official duties.  (ECF No. 11 at Pg ID 88-91.)  Further, Defendants

argue that Plaintiff was not acting as a private citizen when she complained and

that the content, audience, setting, and impetus were all within her official duties as

a nurse.  (*Id.* at Pg ID 89-90.)  Plaintiff does not address this argument in her

response to Defendants' motion to dismiss (*see* ECF No. 14), but instead filed a

motion to amend her complaint to add additional allegations that she informed the

public about the incident at the DDC (*see* ECF No. 13).  As such, the Court will

address this issue in its analysis of Plaintiff's motion.

### B.      Motion to Amend

The Court must determine if Plaintiff's proposed amendment properly

alleges that Plaintiff spoke as a citizen on matters of public concern rather than

pursuant to her official duties.  In Plaintiff's proposed Second Amended

Complaint, Plaintiff attempts to amend her pleading to state that she advised

friends and family members that the directive from her supervisors would be

considered job abandonment and leave the DDC without any healthcare

professionals.  As such, she asserts that this directive violated state law and was a

matter of public concern.  (Proposed Second. Am. Compl. ¶ 17, ECF No. 13-1 at

Pg ID 110.)  Plaintiff also alleges that "[i]t is a custom policy and practice of the

MDOC to take adverse employment action against employees who exercise their first amendment right to shine a light on a matter of public concern within the department." (*Id.* ¶ 22, Pg ID 111.)

Defendants argue that the motion is futile because Plaintiff's comments to family and friends "contained incidental references to public concern, but were matters of 'only personal interest' because she was complaining to family and friends about things that happened at work and makes no allegation that she attempted to make any communication to the general public." (ECF No. 15 at Pg ID 145-46.) Further, Defendants argue that Plaintiff cannot demonstrate that this speech was a "substantial" or "motivating factor" in the adverse action where the speech was not known to the MDOC or Defendants. (*Id.* at Pg ID 143-44.)

The critical question when determining whether an employee speaks as a private citizen or as a public employee is whether the public employee made the statement pursuant to official duties. *Garcetti*, 547 U.S. at 424.; *see also Lane v. Franks*, 573 U.S. 228, 240 (2014) ("The critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties."); *Boulton*, 795 F.3d at 534 (explaining that speech made pursuant to official duties is made in furtherance of ordinary responsibilities of employment).

18

Among the factors the Sixth Circuit considers when determining whether an employee's speech was made pursuant to his official duties are (i) "the ordinary scope of the employee's duties"; (ii) "the setting"; (iii) "the audience"; (iv) "the subject matter of the speech"; and (v) "the impetus for the speech." *Holbrook v. Dumas*, 658 F. App'x 280, 288 (6th Cir. 2016) (citing *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 540 (6th Cir. 2012) and *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 546 (6th Cir. 2007)).

The Court finds these factors support a conclusion that the remarks to friends and family members that leaving the DDC without any healthcare professionals violated state law were stated as a private citizen.  Here, the setting was outside of work; the audience consisted of members of the general public; the subject matter was one of public concern; and the impetus for the speech was concern about violations of law and policies.  *See Handy-Clay*, 695 F.3d at 542 (finding no speech pursuant to official duties where conversations held with individuals outside plaintiff's department); *but cf. Holbrook*, 658 F. App'x at 288 (finding speech pursuant to official duties where plaintiff "sent the e-mail as Fire Chief, from his official e-mail account, to fire department employees, informing them of a development potentially affecting their employment, out of a sense of duty to them and concern for their well-being").

Lastly, Defendants argue that Plaintiff has not alleged that the speech was a substantial or "motivating factor" in the employer's adverse employment action. (ECF No. 15 at Pg ID 143 (citing *Farhat*, 370 F.3d at 588.)  When arguing that termination was motivated, at least in part, by protected conduct, a plaintiff "may not rely on the mere fact that an adverse employment action followed speech that the employer would have liked to prevent.  Rather, the employee must link the speech in question to the defendant's decision to dismiss her."  *Bailey v. Floyd Cty. Bd. Of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997) (citation omitted)); *but cf. Handy-Clay*, 695 F.3d at 545–46 ("First, there is enough evidence in the record to support the proposition that the defendants knew of [the employee's] protected speech. . . Second, we note that the chronology of events supports an inference of causation, particularly because [the employee] was terminated the day after she made [the protected speech].")  Here, Plaintiff adequately alleges that the conversations she had with her friends and family members are linked to the adverse employment action.  Plaintiff alleges that adverse employment action was taken against her for shining light on a public concern.  (Proposed Second. Am. Compl. ¶ 22, ECF No. 13-1 at Pg ID 111.)  Further, she alleges that the incident occurred in November 2020 and that she was terminated five months later.  (*Id*. ¶¶ 12, 25, Pg ID 110-11.)  Thus, the Court finds that Plaintiff's motion to amend is not futile.

### 4.    Qualified Immunity

Next, Defendants claim that they are entitled to qualified immunity on Plaintiff's claim for money damages against them in their individual capacities. (ECF No. 11 at Pg ID 94.)  Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800 (1982)).  A two-prong test is used to determine whether qualified immunity applies: "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009) (quoting *Dorsey v. Barber*, 517 F.3d 389, 394 (6th Cir. 2008)).  "In the Sixth Circuit, a public employee's First Amendment right against retaliation for protected speech has been clearly established for nearly two decades." *Kiessel*, 459 F. App'x at 515.  Thus, Defendants' qualified immunity defense fails because Defendants have not shown that the applicable law was not clearly established at the time Defendants acted.

## IV.   Conclusion

Plaintiff's allegations that she had conversations with her family and friends about being asked to leave her designated correctional facility unlawfully was an issue of public concern made as a private citizen.  As such, Plaintiff has alleged

sufficient facts to support an inference that she engaged in constitutionally protected conduct.  Furthermore, the proposed Second Amended Complaint is not futile as it provides additional allegations to support the Plaintiff speaking as a private citizen.

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Dismiss (ECF No. 11) is **DENIED**;

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to Amend her Second Complaint (ECF No. 13) is **GRANTED**.

**IT IS SO ORDERED**.

s/ Linda V. Parker
LINDA  V. PARKER
U.S. DISTRICT JUDGE

Dated: August 8, 2022